United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUNICHIRO SONODA, *et al.*,

        Plaintiffs,

    v.

AMERISAVE MORTGAGE CORPORATION,

        Defendant.
_____/

No. C-11-1803 EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**(Docket No. 18)**

        Plaintiffs Junichiro Sonoda, Lien Duong, and Marvin Kupersmit have filed a class action against Defendant Amerisave Mortgage Corporation. Among the causes of action asserted in the complaint are claims for violation of the Truth in Lending Act ("TILA"), violation of the California Consumers Legal Remedies Act ("CLRA"), violation of California Business & Professions Code § 17200, and breach of contract. Currently pending before the Court is Amerisave's motion to dismiss. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Amerisave's motion.

**I.    DISCUSSION**

        Plaintiffs have filed suit against Amerisave alleging that, in conjunction with their applying for a mortgage loan: (1) Amerisave charged each of them a property appraisal fee before providing a Good Faith Estimate of closing costs (allegedly a violation TILA), *see* Compl. ¶ 29; and (2) Amerisave made to each of them deceptive promises about a lock-in rate that it did not intend to honor. *See id.* ¶ 32. In the currently pending motion to dismiss, Amerisave seeks to dismiss some of

the California causes of action; more specifically, it seeks to dismiss the CLRA claim and the § 17200 claim to the extent it is based on a violation of the CLRA.  Amerisave also seeks dismissal of any of the state law claims to the extent they are based on a violation of TILA on the ground that they are preempted.

A.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

B.      CLRA

The CLRA prohibits, *inter alia*, certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

> (a)     "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes . . . .
>
> (b)     "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

2

*Id.* § 1761.  In the instant case, Amerisave argues that the CLRA claim should be dismissed because the CLRA covers only transactions related to the sale of tangible chattels or services, and a mortgage loan constitutes neither a tangible chattel nor a service.

There can be no dispute that a mortgage loan is not a "good," *i.e.*, a tangible chattel.  *See also Fairbanks v. Superior Court*, 46 Cal. 4th at 65 (providing as examples of intangible goods "investment securities, bank deposit accounts and loans, and so forth").  As to whether a mortgage loan is a "service," the California Supreme Court's decision in *Fairbanks* establishes that it is not.  In *Fairbanks*, the issue before the Court was "whether life insurance is a 'service' subject to the [CLRA's] remedial provisions."  *Id.* at 59.  The Court determined that it is not because "[a]n insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel."  *Id.* at 61.  If a contractual obligation to *pay* money (under an insurance contract) is not a service, then neither is a contractual obligation to *lend* money.  A contractual obligation to lend money is neither work nor labor, nor is it related to the sale or repair of any tangible chattel.  *See Justo v. Indymac Bancorp*, No. SACV 09-1116 JVS (AGRx), 2010 U.S. Dist. LEXIS 22831, at *10 (C.D. Cal. Feb. 19, 2010) (noting that "[a] loan modification itself, like a life insurance policy, is merely a contract specifying the schedule of loan repayment[;] [i]t involves no work or labor, nor any repair to a chattel").  The legislative history of the CLRA confirms the lending of money is not covered by the statute.  *See Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224, 231 (2007) (stating that "courts must not interpret a statute to include terms the Legislature deleted from earlier drafts" and "[h]ere, the Legislature's deletion of the terms 'money' and 'credit' from CLRA's definition of 'consumer' strongly counsels us not to stretch the provision to include extensions of credit unrelated to the purchase of any specific good or service").

Plaintiffs do not seriously contend the lending of money is covered by the CLRA, and concede that the provision of ancillary services in connection with such lending is not covered.  *Fairbanks* is instructive on this point.  In *Fairbanks*, the plaintiffs asserted that,

> if life insurance policies by themselves are not services as defined in the Consumers Legal Remedies Act, the work or labor of insurance agents and other insurance company employees in helping consumers

3

> select policies that meet their needs, in assisting policyholders to keep their policies in force, and in processing claims are services that are sufficient to bring life insurance within the reach of the Consumers Legal Remedies Act. We disagree.
>
> As Farmers points out, ancillary services are provided by the sellers of virtually all intangible goods – investment securities, bank deposit accounts and loans, and so forth. The sellers of virtually all these intangible items assist prospective customers in selecting products that suit their needs, and they often provide additional customer services related to the maintenance, value, use, redemption, resale, or repayment of the intangible item. *Using the existence of these ancillary services to bring intangible goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in limiting the definition of "goods" to include only "tangible chattels."* We conclude, accordingly, that the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the Consumers Legal Remedies Act.

*Fairbanks*, 46 Cal. 4th at 65 (emphasis added). Notably, in *Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002 (N.D. Cal. 2009), this Court held that *Fairbanks*'s reasoning in meant that ancillary services provided in the sale of a mortgage loan – an intangible good – did not bring the loan within the coverage of the CLRA. *See id.* at 1016-17. As Amerisave points out, other courts have held the same. *See, e.g.*, *Becker v. Wells Fargo Bank, N.A., Inc.*, 2011 U.S. Dist. LEXIS 29687, at *38 (E.D. Cal. Mar. 22, 2011) (stating that, in *Fairbanks*, "the California Supreme Court clarified that ancillary loan 'servicing' does not bring a loan within the scope of the CLRA and that statute's definition of 'services'"); *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 U.S. Dist. LEXIS 72985, at *--- (S.D. Cal. July 20, 2010) (stating that, "[s]ince *Fairbanks*, courts have held that the CLRA is inapplicable to mortgage loans and the ancillary services related to them"); *Reynoso v. Paul Fin., LLC*, No. 09-3225 SC, 2009 U.S. Dist. LEXIS 106555, at *28 (N.D. Cal. Nov. 16, 2009) (citing *Fairbanks* in support of the statement that, "[e]ven if the Complaint could be construed as stating a claim related to 'services' provided in relation to the loan, such ancillary services are not covered by the statute").

Plaintiffs argue that the above authority is not applicable for two reasons: (1) because in those cases a mortgage was actually at issue here whereas here Plaintiffs never obtained a mortgage, and (2) because Amerisave performs non-ancillary services independent of lending.

4

With respect to the first argument, the fact that Plaintiffs never obtained a mortgage is not material to the applicability of the CLRA. Not only do Plaintiffs fail to cite any authority for their argument, their position makes little logical sense. Under their proposed dichotomy, all other facts remaining the same, the CLRA would apply if the loan was not consummated, but would not apply if the loan was. Faced with the curious consequence of their argument, Plaintiffs abandoned the distinction at the hearing, and then contended that the CLRA provides coverage regardless of whether or not a mortgage was actually obtained.

As for the second argument, Plaintiffs contend a service is non-ancillary (and thus an independent service) where it has been independently bargained for. *See* Opp'n at 12. Again, Plaintiffs cite no case law in support. In determining what is ancillary for purposes of the instant case, the Court finds it appropriate to look at *what* was intended to be sold or what was sold as required by the language of the statute. *See* Cal. Civ. Code § 1770 (prohibiting certain acts and practices "in a transaction intended to result or which results in the sale or lease of goods or services to any consumer"). If what was ultimately being sold by Amerisave was a mortgage loan (an intangible good), then, as *Fairbanks* holds , the services directly related to the sale of the loan (*e.g.*, representations about and negotiations over the terms of the loan) – especially those which serve as a necessary predicate to the transaction – are ancillary. *Cf.* Black's Law Dictionary 95 (8th ed.) (defining "ancillary" as "supplementary" or "subordinate").

To be sure, if Amerisave was not loaning money but instead acted only as a broker for other third-party lenders, then arguably what Amerisave was selling was its work or labor in finding a loan for Plaintiffs (rather than negotiating terms of it own loans). Such brokerage services might well qualify as "services" under the CLRA. *See id.* § 1761(b) (defining services as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods").

In their opposition, Plaintiffs seize on this distinction and contend that Amerisave is a broker rather than a direct lender. However, Plaintiffs' complaint alleges that Amerisave is a lender, not a broker. *See, e.g.*, Compl. ¶ 1 (alleging that Amerisave "holds itself out to the public as a nationwide direct lender of residential home mortgages at the best rates available"); *id.* ¶ 15 (alleging that

5

"Amerisave is a licensed originator and originator of mortgages in California, Maryland, Florida, and throughout the United States"); *see also id.* ¶¶ 105-06, 108 (making allegations about Amerisave providing a lock-in interest rate).

The Court acknowledges that, in paragraph 16 of the complaint, Plaintiff does allege that "Amerisave advertises itself as a discount lender *and* broker." *Id.* ¶ 16 (emphasis added). However, the advertisement to which Plaintiffs refer actually states that Amerisave is a lender, not a broker (although it does compare Amerisave to a broker). More specifically, Amerisave's website state that it "is a direct correspondent *lender* for the largest mortgage banks in the country. We process, underwrite and close mortgages for most of the banks. Thus, we can shop your loan around *like a broker*, but we still maintain the control of a lender." *Id.* (internal quotation marks omitted; emphasis added).

While it is possible that a "direct correspondent lender" may actually be a broker, there is no non-conclusory plausible allegation before the Court so claiming, and the complaint actually alleges otherwise.[1] Accordingly, the Court concludes that (1) based on the allegations in the complaint, Plaintiffs were attempting to obtain a mortgage loan from Amerisave as a lender; (2) because a loan is an intangible good, the CLRA is not applicable; and (3) per *Fairbanks*, services related the loan are ancillary to the loan itself and therefore do not bring this case within the coverage of the CLRA. The CLRA claim therefore is dismissed without prejudice, as is the § 17200 claim to the extent it is based on a violation of the CLRA.

C.  TILA Preemption

Amerisave's second argument is that any state law claim (whether the CLRA claim or any other state law-based claim) must be dismissed to the extent it is based on a violation of TILA because TILA preempts that claim.

In addressing this argument, the Court begins by taking note that TILA has an explicit preemption provision. It provides in relevant part as follows:

---

[1] As this is a Rule 12(b)(6) motion, the Court does not take into account Amerisave's evidence that it "acts as a mortgage broker only in New York." Reply at 2 n.2 (emphasis omitted; citing Sedgwick Decl. ¶ 10).

> Except as provided in subsection (e), chapters 1, 2, and 3 [15 U.S.C. §§ 1601 *et seq.*, 1631 *et seq.*, and 1661 *et seq.*] do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this title [15 U.S.C. §§ 1601 *et seq.*], and then only to the extent of the inconsistency.

15 U.S.C. § 1610(a)(1).

In the instant case, Plaintiffs have asserted a violation of TILA because Amerisave made them pay appraisal fees before providing a Good Faith Estimate, *see* Compl. ¶ 2 (alleging that, "in order to lock in a rate, the consumer must pay for a property appraisal, even before Amerisave provides a Good Faith Estimate of Closing costs, a deceptive practice that is forbidden by [TILA]"), and at least some of the state law claims asserted by Plaintiffs are based on the alleged violation of TILA. *See, e.g.*, Compl. ¶¶ 107, 113 (alleging that Amerisave violated (1) the CLRA "by representing that it has rights and remedies that are prohibited by law, specifically that it has the right to collect application and appraisal fees prior to providing a Good Faith Estimate, in violation of TILA"; (2) § 17200 by "[i]mposing and collecting unnecessary and excessive fees and charges, particularly appraisal fees, not authorized by law" and by "[e]ngaging in conduct that violates state and federal consumer protection laws").

Because the state law claims are based on the alleged violation of TILA, they are not inconsistent with TILA. The state law claims do not assert any disclosure obligations which contradict the requirements of TILA. *See* 12 C.F.R. § 226.28(a) (providing that, as a general matter, "state law requirements that are inconsistent with the requirements contained in chapter 1 (General Provisions), chapter 2 (Credit Transactions), or chapter 3 (Credit Advertising) of the act and the implementing provisions of this regulation are preempted to the extent of the inconsistency"; adding that "[a] State law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law").

Amerisave points out, however, that it is making a different preemption argument. According to Amerisave, it does not claim direct conflict which makes compliance with California law and TILA impossible. *Cf. Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963) (example of such conflict preemption). Rather, Amerisave asserts a claim of obstacle

7

preemption – that the "state law claims are preempted because they expose creditors to liability that directly conflicts with the carefully-crafted remedial scheme implemented by Congress to enforce TILA violations." *Id. Cf. Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (discussing obstacle preemption. *See generally English v. General Electric Co.*, 496 U.S. 72, 79 (1990). In short, Amerisave contends the California claims frustrates the purpose and enforcement of TILA.

Amerisave's assertion of obstacle preemption, which is broader than preemption based on direct conflict, is not persuasive.

First, states generally are not barred from supplementing federal law with additional remedies absent field preemption. In *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008), the court stated as follows: "When federal law preempts a field, it leaves 'no room for the States to supplement it.' [Thus,] [w]hen an entire field is preempted, a state may not add a damages remedy unavailable under the federal law." *Id.* at 1007 n.3. TILA does not impose field-preemption. *See Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1148 (N.D. Cal. 2010) (Fogel, J.).

Second, the language of the preemption provision of TILA suggests that the scope of preemption was intended to be narrowly circumscribed. As noted above, the provision states that only inconsistent laws are preempted "and then *only* to the extent of the inconsistency." 15 U.S.C. § 1610(a)(1) (emphasis added). Furthermore, Regulation Z provides that "[a] State law is inconsistent if it requires a creditor to make disclosures or take actions that *contradict* the requirements of the Federal law." 12 C.F.R. § 226.28(a) (emphasis added). This language is more consistent with direct conflict preemption rather than obstacle preemption.

Third, even if obstacle preemption were implied under TILA's § 1610(a)(1) or were otherwise applicable, the Court does not find that the state law claims stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. To determine whether obstacle preemption exists, the Supreme Court has instructed that a court employ its

> judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects:
>
> "For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered

8

> and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished – if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect – the state law must yield to the regulation of Congress within the sphere of its delegated power."

*Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000).

TILA's express purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). In short, TILA's purpose is "to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

Given TILA's purpose, state law claims do not conflict with the federal statute merely because they provide greater protection to consumers. *See Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034 (C.D. Cal. 2008). In *Monaco*, the defendants argued (as Amerisave does here) that the plaintiffs' § 17200 claim – which sought remedies not provided for under TILA – was preempted by TILA. According to the defendants therein, "by limiting the remedies available under TILA, Congress sought to avoid over-penalizing creditors, and thus, state laws imposing additional penalties on creditors are 'inconsistent' with TILA." *Id.* at 1039-40. The court rejected the argument, noting that "'[a]dditional penalties are not inconsistent with TILA, but merely provide greater protection to consumers.'" *Id.* at 1040. Judge Wilken of this Court applied the same reasoning in *Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1099 (N.D. Cal. 2008), holding that the fact that § 17200 provided for remedies not available under TILA simply gave consumers "an additional level of protection."

The Court acknowledges that there is authority to support Amerisave's position. *See, e.g.*, *Kanady v. GMAC Mortg., LLC*, No. CV F 10-1742 LJO DLB, 2010 U.S. Dist. LEXIS 108945 (E.D. Cal. Oct. 13, 2010); *Crittenden v. HomEq Servicing*, No. CV F 09-0950 LJO DLB 2009 U.S. Dist. LEXIS 95009 (E.D. Cal. Sept. 29, 2009); *Adams v. SCME Mortg. Bankers, Inc.*, No. CV F 09-0501 LJO SMS, 2009 U.S. Dist. LEXIS 46600 (E.D. Cal. May 22, 2009); *Nava v. VirtualBank*, No.

9

2:08-CV-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819 (E.D. Cal. July 16, 2008).  Nevertheless, the Court find *Monaco* and *Plascencia* more persuasive.  The Court notes that the contrary cases largely rely on two cases that are inapt – *i.e.*, *Silvas* and *Reyes v. Downey Saving & Loan Ass'n*, 541 F. Supp. 2d 1108 (C.D. Cal. 2008).  *Silvas* is of little support to those authorities because, as noted above, in *Silvas*, the Ninth Circuit barred supplementation only where there is field preemption, and TILA is not a field-preemptive statute.  Moreover, as Amerisave conceded at the hearing, there is some ambiguity in *Silvas* as to whether it was addressing TILA preemption specifically or preemption under the Home Owners Loan Act ("HOLA").  *See Silvas*, 514 F.3d at 1007 n.3; *see also infra*.  In *Reyes*, the district court was dealing with HOLA preemption and not TILA preemption.  *See Reyes*, 541 F. Supp. 2d at 1115.

To be sure, where TILA has imposed specific limits on liability through a relatively short statute of limitations and limits on statutory damages, it is a closer question as to whether state laws that exceed those specific limits should be deemed preempted.  Amerisave contends Congress sought to strike a considered balance between the rights of consumers and lenders in imposing those limits, and that such state laws upset that balance.  But absent a clear indication that these limitations constituted an essential "purpose of the act [which] cannot otherwise be accomplished" were state law to expand lender liability by *e.g.*, enacting a longer limitations period, the express limitations on TILA's preemption provision must be respected.  Moreover, Amerisave's argument is belied by the fact that it is undisputed that states can impose substantive disclosure requirements exceeding TILA.  *See* 15 U.S.C. § 1610(a)(1); *Plascencia*, 583 F. Supp. 2d at 1099 (noting that "states may impose requirements beyond what is required under TILA, so long as the states do not mandate the use of 'terms or forms' that are inconsistent with those required by TILA").  Such an expansion of disclosure requirements could upset the purported balance between consumers and lenders as much, if not more so, than an expanded limitations period.  If states are not prohibited from enacting more expansive disclosure requirements, it is difficult to see why they are barred from enacting a longer limitations period.

The Court acknowledges that its ruling herein conflicts with its prior ruling in *Clemens v. J.P. Morgan Chase National Corporate Services*, No. C-09-3365 EMC, 2009 U.S. Dist. LEXIS

111646 (N.D. Cal. Dec. 1, 2009). There, the defendants argued that the plaintiff's § 17200 claim based on a TILA violation should be dismissed because the underlying TILA claim was time barred. This Court agreed with the defendants, stating that, "if a TILA claim is barred by the statute of limitations, then it may not be used as a predicate UCL violation." *Id.* at *22 n.7. In support of this statement, the Court cited *Silvas* and *Distor v. US Bank Na*, No. C 09-02086 SI, 2009 U.S. Dist. LEXIS 98361, at *21 (N.D. Cal. Oct. 22, 2009). *Distor* stated that, "[b]ecause the TILA damages claim is barred by the statute of limitations, it may not be used as a predicate UCL violation" and cited in support, *inter alia*, *Silvas* and *Reyes*.

Having reconsidered, the Court concludes its decision in *Clemens* was in error. In *Silvas*, the federal statute whose preemptive effect was being examined was not TILA but rather HOLA. More specifically, the Ninth Circuit was considering whether the plaintiffs' § 17200 claim was preempted by HOLA, a field-preemptive statute. TILA came into the picture only because the § 17200 claim was predicated on a violation of TILA. The Ninth Circuit stated that, "[w]hen an entire field is preempted [here, by HOLA], a state may not add a damages remedy unavailable under the federal law." Silvas, 514 F.3d at 1007 n.3. The court went on to note:

> In this case, it is clear that the UCL has a much longer statute of limitations than does TILA. It is also clear that Appellants seek to take advantage of the longer statute of limitations under UCL to remedy TILA violations, because without the extended limitations period their claims would be barred.
>
> An attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law.

*Id.* (emphasis added). Although not entirely clear on its face, taken in context, the last statement above must have been about HOLA preemption, which was the only preemption at issue, and not TILA preemption. Indeed, the district court's decision in *Silvas v. E*Trade Mortg. Corp.*, 421 F. Supp. 2d 1315 (S.D. Cal. 2006) explained that "[t]he application of the UCL to Defendant as a federal thrift is therefore, in this instance, preempted by [HOLA]." Thus, this Court's reliance in *Clemens* upon *Silvas* and *Distor* was misplaced.

Accordingly, the Court denies Amerisave's motion to dismiss the state law claims based on

TILA. There is no conflict preemption.

## II. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The motion is granted to the extent the Court dismisses the CLRA claim and the § 17200 claim to the extent it is based on a violation of the CLRA. The dismissal is without prejudice. Although not required to, Plaintiffs have leave to file an amended complaint, repleading the CLRA claim and the CLRA-based § 17200 claim, within thirty days from the date of this order. If Plaintiffs do replead these claims, they must have a good faith basis consistent with Rule 11 for making the allegations in support of the claims (*e.g.*, that Amerisave is a broker and not a lender). The remainder of the motion is denied.

This order disposes of Docket No. 18.

IT IS SO ORDERED.

Dated: July 8, 2011

_____
EDWARD M. CHEN
United States District Judge