JAMES C. STURDEVANT (SBN 94551)
(jsturdevant@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420

STEVEN A. SKALET (*admitted pro hac vice*)
(sskalet@findjustice.com)
CRAIG L. BRISKIN (*admitted pro hac vice*)
(cbriskin@findjustice.com)
TARYN WILGUS NULL (SBN 985724)
(twilgusnull@findjustice.com)
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

(*Additional Counsel Listed on Signature Page*)

Attorneys for Plaintiffs and the Putative Class

KILPATRICK TOWNSEND & STOCKTON LLP
ROBERT D. TADLOCK (State Bar No. 238479)
Two Embarcadero Center, Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: rtadlock@kilpatricktownsend.com

Pro hac vice:
JAMES F. BOGAN III (GA State Bar No. 065220)
CINDY D. HANSON (GA State Bar No. 323920)
KATHRYN C. EDERLE (GA State Bar No. 940539)
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: jbogan@kilpatricktownsend.com
Email: chanson@kilpatricktownsend.com
Email: kederle@kilpatricktownsend.com

Attorneys for Defendant
AMERISAVE MORTGAGE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUNICHIRO SONODA, LIEN DUONG, and MARVIN KUPERSMIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERISAVE MORTGAGE CORPORATION, a Georgia corporation,<br><br>Defendant. | Case No. C 11-01803 EMC<br><br>SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Date: October 12, 2012<br>Time: 1:30 p.m.<br><br>Judge: Honorable Edward M. Chen<br>Courtroom 5, 17th Floor |

Pursuant to the Court's September 20, 2012 Order (*see* Dkt. # 87), the parties file this supplemental briefing in support of the Motion for Preliminary Approval of Class Action Settlement, which was filed on September 4, 2012. The parties' responses are jointly submitted except where otherwise indicated.

1. <u>Class Definition</u>

   a. <u>Dates</u>

The dates of the **credit check fee** reflect the time during which: (1) Amerisave Mortgage Corporation ("Amerisave") charged customers more than the actual amount it paid to obtain a credit report, before providing a Good Faith Estimate, which Plaintiffs assert was a violation of the Truth in Lending Act ("TILA"); and (2) the TILA section at issue was effective. *See* 15 U.S.C. §1638(b)(2)(E); 12 C.F.R. § 226.19(a)(1)(ii)-(iii). (Plaintiffs also assert that this practice was an unfair and deceptive practice, and constituted a breach of contract.) July 30, 2009 was the date on which the TILA section at issue became effective. *See* Truth in Lending, 74 Fed. Reg. 23289-01 (May 19, 2009). As of May 9, 2011, Amerisave

SUPP. BRIEF IN SUPPORT OF MTN. FOR PRELIMINARY APPROVAL OF SETTLEMENT -- Page 1

began to charge the amount it paid for the credit report, which is either $7.50 for an individual applicant, $12 for a married or partner applicant, and $15 for a joint application.

The dates of the **appraisal fee** reflect the time period during which Amerisave charged a separate amount for the appraisal. Before that time, Amerisave charged an "application fee," which included the cost of an appraisal, and it represented the fee as such. Plaintiffs stated two reasons why the appraisal fee was illegal and unfair. First, customers had to authorize the fee prior to receiving a Good Faith Estimate. As of May 9, 2011, Amerisave changed the disclosure on the website to state that the customer's credit card would not be charged until after the GFE was provided. Second, Plaintiffs alleged that Amerisave systematically failed to process loan applications properly, and denied class members' applications for pretextual reasons.

The dates of the **cancellation fee** represent the entire time period during which Amerisave charged customers this fee. Thus, anyone who paid this fee is included in the class. Amerisave ceased charging a cancellation fee as of June 5, 2012.

    b. <u>Persons Who Did Obtain a Loan</u>

The proposed settlement class is purposely limited to Amerisave customers who did not obtain a loan. Customers who did obtain a loan would have paid appraisal and credit check fees regardless of the practices Plaintiffs challenge in this case. Customers whose applications were approved were not charged a cancellation fee. By definition, only those whose applications were canceled were charged such a fee.

2. <u>Maximum Value of Plaintiffs' Case</u>

Plaintiffs estimated the maximum value of their case at approximately $16,302,600. This figure includes all appraisal, credit check and cancellation fees paid by the class, as reflected in Defendants' records, as of approximately July 25, 2012. Only the amount of the "credit check fee" that exceeds the amount Amerisave actually paid for a credit report is reflected in this estimate. The figure also accounts for any partial refunds Amerisave provided to the class. The figure reflects a nationwide total for such charges, not just those states in

which the representative plaintiffs reside. And it reflects all such charges without regard to the difficulty of proving liability as to each of the charges, which challenges the parties discuss further in Section four (4), below.

This estimate does not include statutory damages, which Amerisave argues are not available, nor does it include punitive damages, which the parties agree are unlikely to be awarded in a case involving consumer overcharges.

3. Fees

Credit check fee: Class members, with a few exceptions, were charged $35 for a credit check. The actual cost to Amerisave to obtain a credit report ranged from $7.50 to $15. Plaintiffs maintain that any amount Amerisave charged in excess of the actual cost of the credit report was illegal, and this is the amount used to determine the class recovery.

Appraisal fee: Amerisave charged class members appraisal fees ranging from $75 to $2800. The average fee paid was approximately $393. The mean fee paid was $375.

Cancellation fee: The cancellation fee, with few exceptions, was $500.

4. Strengths and Weaknesses in Plaintiffs' Case

  a. Plaintiffs' Position:

Plaintiffs challenged Amerisave's standard practices, reflected on their website, of assessing underwriting and appraisal fees before providing a Good Faith Estimate, in violation of the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* Amerisave represented to customers that they had to pay fees in order to "lock in" the quoted rate, but in fact, the purpose of these fees was to function in place of an application fee, and to "lock in" the customer to the application process. Plaintiffs alleged that Amerisave charged a cancellation fee of $500 to customers who cancelled their applications, without informing them of this fee before they paid the other fees. Plaintiffs sued to recover under TILA, breach of contract, and state unfair and deceptive practices statutes. Among other things, Plaintiffs have alleged that during the relevant period, Amerisave acted solely as a broker or re-seller of other companies'

mortgage products, and as such was subject to liability under the California Consumers Legal Remedies Act, as well as California's Unfair Competition Law.

Plaintiffs have contended that this case is well-suited to class certification, because it involves uniform representations and processing on Amerisave's website, and involves fees and charges that are easily calculable for each member of the class with reference to Amerisave's electronic records.

      b. <u>Amerisave's Position</u>:

Not only are statutory damages not available for the alleged TILA violation at issue, Amerisave believes that Plaintiffs' case rests on several fundamental factual misapprehensions and presents issues of manageability.

TILA and its implementing regulation (Regulation Z) prohibit mortgage lenders from charging a fee, other than a reasonable fee for a credit check, prior to providing consumers with certain disclosures. 15 U.S.C. §1638(b)(2)(E); 12 C.F.R. § 226.19(a)(1)(ii)-(iii).

Plaintiffs allege that Amerisave has violated these sections of TILA and Regulation Z by charging "an application fee, hundreds of dollar for a property appraisal, and/or charges for other fees before issuing Good Faith Estimates." Amended Complaint ¶ 89. This core factual allegation is incorrect.

First, Amerisave does not impose an appraisal fee prior to providing GFEs. Amerisave obtained authorization for the cost of the appraisal but did not charge an applicant's credit card for this appraisal until the GFE has been acknowledged and the appraisal has been completed. This is not "imposing" a fee under TILA. There is no case law to indicate that this practice is a violation of TILA.

Second, even if Amerisave had imposed fees other than a reasonable fee for a credit check prior to providing GFEs to consumers, the Ninth Circuit has made clear that Plaintiffs may not seek statutory damages for these alleged violations. In *McDonald v. Checks-N-Advance, Inc. (In re Ferrell)*, a bankruptcy trustee alleged a creditor had failed to make the disclosures required by TILA prior to the consummation of the transaction, in violation of the

1  timing requirements contained in TILA section 1638(b) and its corresponding regulation, 12

2  C.F.R. § 226.17. 539 F.3d 1186, 1189 (9th Cir. 2008). The trustee sought both statutory and

3  actual damages under TILA.

4      Holding that statutory damages were unavailable for violations of 15 U.S.C. § 1638(b)

5  and 12 C.F.R. § 226.17, the court found that "[t]he Truth in Lending Act provides a cause of

6  action for consumers to obtain actual or statutory damages for a creditor's failure to comply

7  with certain requirements of the Act . . . [h]owever, there are exceptions to the recovery of

8  statutory damages." *Id.* at 1190 (citing 15 U.S.C. § 1640(a)). The Ninth Circuit noted that 15

9  U.S.C. § 1640(a) provides that "*except as otherwise provided in this section*, any creditor who

10  fails to comply with any requirement imposed under this part [§§ 1631-1649] . . . with respect

11  to any person is liable to such person in an amount equal to the sum of" actual damages and

12  statutory damages. *Id.* (emphasis and ellipsis in original). With regard to these exceptions, 15

13  U.S.C. § 1640(a) provides:

> *In connection with the disclosures referred to in section 1638 of this title*, a creditor shall have a liability determined under paragraph (2) *only* for failing to comply with the requirements of section 1635 of this title, of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or section 1638(b)(2)(C)(ii) of this title, of subparagraphs (A), (B), (D), (F), or (J) of section 1638(e)(2) of this title (for purposes of paragraph (2) or (4) of section 1638(e) of this title), or paragraph (4)(C), (6), (7), or (8) of section 1638(e) of this title, or for failing to comply with disclosure requirements under State law for any term which the Bureau has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title or section 1638(b)(2)(C)(ii) of this title.

22  15 U.S.C. § 1640 (emphasis added); *see also In re Ferrell*, 539 F.3d at 1190 (emphasizing

23  same). The court thus found that:

> the language "[i]n connection with the disclosures referred to in section 1638" encompasses more than just the disclosure rules of 1638. The use of the word "only" then limits recovery for violations of any of these disclosures to a closed list of violations . . . . This accords with Congress's desire to "narrow a creditor's civil liability for statutory penalties to only those disclosure[s] which are of central importance in understanding a credit transaction's costs or terms."

>Reading the rule more broadly would not accord with Congress's intent to "eliminate litigation which is based on violations of a purely technical nature."

*In re Ferrell*, 539 F.3d at 1191 (citations omitted) (alteration in original).

Plaintiffs allege Amerisave violated 15 U.S.C. § 1638(b)(2)(E) and its corresponding regulation, 12 C.F.R. § 226.19(a). *See*, *e.g.*, Amended Complaint ¶ 89. Under *In re Ferrell* and the plain text of 15 U.S.C. § 1640(a), statutory damages are not available to Plaintiffs for these alleged violations. The alleged violations are plainly "in connection with the disclosures referred to in section 1638," indeed they arise under section 15 U.S.C. § 1638(b)(2)(E) and its corresponding implementing regulation. *See In re Ferrell*, 539 F.3d at 1191; 15 U.S.C. § 1640(a). And, as the Ninth Circuit has made clear, because section 1638(b)(2)(E) "does not fall within the closed list" of violations for which statutory damages are available, Plaintiffs may not seek statutory damages for any alleged violation of this provision and its implementing regulation. *See In re Ferrell*, 539 F.3d at 1192.

In addition, Plaintiffs are precluded from arguing that a violation of section 1638(b)(2)(E)'s timing requirements also violates section 1638(a) for which statutory damages are available, for example by attempting to claim that a timing violation is actually a failure to disclose at all. *See In re Ferrell*, 358 B.R. 777, 787-78 (B.A. P. 9th Cir. 2006), *aff'd*, 539 F.3d 1186 (9th Cir. 2008); *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 991 (7th Cir. 2000).

Lastly, Plaintiffs cannot argue that Regulation Z provides an independent basis for statutory damages as this argument also has been rejected by the Ninth Circuit. In *In re Ferrell* the trustee argued that violations of Regulation Z are separate requirements not mentioned in § 1640(a) and therefore violations thereof are entitled to statutory damages. 358 B.R. at 789. The court disagreed, finding that where the section of TILA and the corresponding section of Regulation Z allegedly violated are consistent, a violation of Regulation Z does not provide an independent basis for statutory damages. *Id.* at 789-90; *accord In re Ferrell*, 539 F.3d at 1191. As both 15 U.S.C. § 1638(b)(2)(E) and 12 C.F.R. 226.19(a) prohibit a lender from collecting a fee other than a fee for a credit report prior to

making initial disclosures, they are clearly consistent and Plaintiffs may not recover statutory damages for an "independent" violation of Regulation Z.

Therefore, even if Plaintiffs can show that Amerisave has violated TILA by imposing a fee prior to providing a GFE, a claim that Amerisave denies, Plaintiffs may not recover statutory damages for this purported violation.

There are several other weaknesses to Plaintiffs' claims. Amerisave is a mortgage lender and the transactions at issue in this case are mortgage loans. As such, Amerisave has a strong argument that the Consumer Legal Remedies Act ("CLRA") does not apply to the disputed conduct in this case. *See Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1016-17 (N.D. Cal. 2009) (Chen, J.) (holding that "loans are intangible goods and that ancillary services provided in the sale of intangible goods do not bring these goods within the coverage of the CLRA"); *Reynoso v. Paul Fn., LLC,* No. C 09-3225 (SC), 2009 WL 3833298, *9 (N.D. Cal. Nov. 16, 2009) (The CLRA "does not typically apply to mortgage loans, which are neither goods nor services."); *Perlas v. Mortg. Elec. Registration Sys., Inc.*, No. C. 09-4500 CRB, 2010 WL 3079262, at *5 (N.D. Cal. Aug. 6, 2010) (finding that the CLRA did not apply to mortgage transaction); *Becker v. Wells Fargo Bank*, No. 2:10-cv-02799 LKK KJN PS, 2011 WL 1103439, at *14 (E.D. Cal. Mar. 22, 2011) (same); *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, at *11 (S.D. Cal. Aug. 23, 2010) ("Since *Fairbanks*, courts have held that the CLRA is inapplicable to mortgage loans and the ancillary services related to them."); *Justo v. Indymac Bancorp*, No. SACV 09-1116 JVS (AGRx), 2010 WL 623715, at *3 (C.D. Cal. Feb. 19, 2010) (finding mortgage loan modification transaction not covered by the CLRA). Therefore, although the Court permitted the Plaintiffs to replead their claims under the CLRA, Amerisave believes Plaintiffs would have difficulty recovering under the CLRA.

Additionally, Amerisave does not retain the appraisal fee that it collects from consumers. This is a pass-through fee to third-party appraisers. This key fact undercuts much of Plaintiffs' case. It also means that Plaintiffs may not seek restitution of these fees under

1   California's Unfair Competition Law ("UCL") or other theory of restitution. *See Kwikset*
2   *Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011) (holding that in order to seek
3   restitution under the UCL, there must be a corresponding gain by the defendant of the money
4   or property lost by the plaintiff); *see also In re Apple and AT&T IPad Unlimited Data Plan*
5   *Litig.*, No. C-10-02553 RMW, 2011 WL 2847418 (N.D. Cal. July 18, 2011) (same); *accord In*
6   *re Citibank Heloc Reduction Litig.*, No. C-09-0350 MMC, 2010 WL 3447724 (N.D. Cal. Aug.
7   30, 2010) (finding plaintiffs failed to state a claim for restitution when defendant received no
8   benefit from a payment made to a third party).

9   Lastly, Plaintiffs' case presents significant issues of manageability. Amerisave
10  employees communicated with many class members via telephone and email before, during,
11  and after the application process. Therefore class members may have been exposed to
12  disparate information from different sources. Additionally, some class members may have
13  relied on certain representations and disclosures whereas others may not have. The steps
14  Amerisave took to lock an applicant's rate, if an applicant's rate was locked, and why a
15  mortgage loan was denied also may vary by individual class member. If an applicant was
16  damaged by any of Amerisave's alleged conduct is also an issue that could vary by class
17  member, as, for example, some class members may have received lower interest rates
18  elsewhere.

19  Amerisave believes these aforementioned weaknesses present significant challenges to
20  Plaintiffs' case but are willing to resolve the litigation before additional significant costs are
21  incurred.

22  5. <u>Attorneys' Fees and Costs</u>

23  The Court is correct that the $775,000 amount to be deducted from the settlement fund
24  is to pay both Plaintiffs' attorneys' fees and costs. An additional $100,000 has been allocated
25  from the settlement fund to cover the cost of settlement administration. Any amount of the
26  $100,000 not paid to the settlement administrator will revert to the fund. Plaintiffs' attorneys
27  estimate that they have expended $50,414.53 in actual litigation costs to date.
28

6. Cy Pres

The parties believe that although a reversion provision may be problematic in some situations, these circumstances are not present here. This is not a "claims-made" settlement and only up to $100,000 may revert to Amerisave. This does not render the settlement fund "illusory," as in other cases where a reverter was found to be problematic. *See*, *e.g.*, Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2011 WL 4831157, at *5 (N.D. Cal. Oct. 12, 2011) (Chen, J.) (where, due in part to reversion provision, defendant would only pay out $1 million of $13 million settlement fund). Additionally, the settlement agreement does not provide for the reversion of any unawarded attorneys' fees, which is a type of reversion provision that courts may view with more scrutiny. *See Glass v. UBS Fin. Servs., Inc.*, 331 Fed. App'x 452, 456 n.2 (9th Cir. 2009) (noting that although clauses mandating the reversion of unclaimed funds are common, provisions providing for the reversion of attorneys' fees can be particularly problematic).

Where these issues are not present, courts in the Ninth Circuit routinely approve settlement agreements that contain a provision for the reversion of unclaimed funds. *See*, *e.g.*, *Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538, at *1 (N.D. Cal. Apr. 27, 2010) (approving settlement wherein defendant would "retain a substantial portion of the common fund through reversion"); *Sarabri v. Weltman, Weinberg & Reis Co.*, No. 10cv1777 AJB (NLS), 2012 WL 3909123, at *3 (S.D. Cal. Sept. 4, 2012) (approving settlement agreement with provision for reversion of unclaimed funds). Therefore, the parties believe it is reasonable that Amerisave may receive a refund of any unclaimed amount up to $100,000.

7. Information to Be Filed by Settlement Administrator

The parties and the settlement administrator agree that it is possible for the settlement administrator to make filings with the Court at least fourteen (14) days in advance of the final approval hearing, instead of the seven (7) days they had initially proposed.

8. Class Notice

    a. Long-Form Notice

The proposed notice materials will incorporate the changes ordered by the Court.

*Page 1.* As the Court has instructed, the notice will include a statement on the first page as to how much money class members will receive – *i.e.,* approximately 13.57% of the appraisal fee, cancellation fee, and/or excessive credit check fee.

*Chart (on page 1).* As the Court has instructed, the "object" option will include the following statement: "In your objection, you may ask to speak in Court about the fairness of the settlement. [¶] Please note that, if you make an objection, and that objection is rejected by the Court, you will be bound by the settlement if it is approved. The only way not to be bound by the settlement is to exclude yourself from the settlement (*i.e.,* opt out)."

*Chart (on page 1).* The "go to a hearing" option will be deleted.

*Section 4 (on page 4).* The parties agree to extend the period that checks can be redeemed from four months to six months.

*Section 11 (on page 7).* The parties are willing to include the following reminder: "Please note that, if you make an objection, and that objection is rejected by the Court, you will be bound by the settlement if it is approved. The only way not to be bound by the settlement is to exclude yourself from the settlement (*i.e.,* opt out)."

      b. <u>Email and Postcard Notice</u>

*Page 1.* The notice will include a statement on the first page as to how much money class members will receive – *i.e.*, approximately 13.57% of the appraisal fee, cancellation fee, and/or excessive credit check fee.

*Section on "Your Rights."* The parties will include the statement suggested by the Court on objecting: "Please note that, if you make an objection, and that objection is rejected by the Court, you will be bound by the settlement if it is approved. The only way not to be bound by the settlement is to exclude yourself from the settlement (*i.e.,* opt out)."

9. <u>Proposed Order</u>

The parties are willing to give all class members at least 60 days to opt out or object, given that some class members will receive notice by postcard rather than by email. The

parties are evaluating if this is possible using the current deadlines, or whether it will be necessary to extend the deadlines. The parties will provide the Court with an update and submit revised Notices and a revised Proposed Order by October 5, 2012.

Plaintiffs wish to inform the Court that once the draft Postcard Notice was formatted by the Settlement Administrator, the font was too small to read when the Notice was in the postcard format. As a result, the settlement administrator proposed and the parties agreed to distribute the Notice on a single-page self-mailer, rather than a postcard. The content is the same, in a much more legible format. The self-mailer notice reflects changes suggested and/or ordered by the Court.

Respectfully submitted,

Dated: October 1, 2012

By: */s/ Craig L. Briskin*
Craig L. Briskin*
Steven A. Skalet*
Taryn Wilgus Null (985724)
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

James C. Sturdevant (SBN 94551)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420

Michael D. Donovan*
Noah Axler*
DONOVAN SEARLES & AXLER, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

Whitney Stark (SBN 234863)
RUKIN, HYLAND, DORIA & TINDALL
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

Attorneys for Plaintiffs and the Putative Class

*Admitted Pro Hac Vice*

Dated: October 1, 2012         KILPATRICK TOWNSEND & STOCKTON LLP


By: */s/ Robert D. Tadlock*
    Robert D. Tadlock
Attorneys for Defendant
AMERISAVE MORTGAGE CORPORATION

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 1, 2012.

/s/ Craig L. Briskin
Craig L. Briskin

MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
E-mail: cbriskin@findjustice.com