JAMES C. STURDEVANT (SBN 94551)
(jsturdevant@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420

STEVEN A. SKALET (*admitted pro hac vice*)
(sskalet@findjustice.com)
CRAIG L. BRISKIN (*admitted pro hac vice*)
(cbriskin@findjustice.com)
TARYN WILGUS NULL (SBN 985724)
(twilgusnull@findjustice.com)
MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

(*Additional Counsel Listed on Signature Page*)

Attorneys for Plaintiffs and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUNICHIRO SONODA, LIEN DUONG, and MARVIN KUPERSMIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERISAVE MORTGAGE CORPORATION, a Georgia corporation,<br><br>Defendant. | Case No. C 11-01803 EMC<br><br>NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: February 28, 2013<br>Time: 1:30 p.m.<br><br>Judge: Honorable Edward M. Chen<br>Courtroom 5, 17th Floor |

1
2

# TABLE OF CONTENTS

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I. INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF THE CASE ...................................................................... 2

    A.   Procedural Background ........................................................................ 2

    B.   Discovery and Mediation ..................................................................... 3

    C.   Preliminary Approval .......................................................................... 4

III.  SUMMARY OF THE PROPOSED SETTLEMENT ................................. 5

    A.   Relief to the Settlement Class .............................................................. 5

    B.   Direct Payment to Class Members With No Claims Form Requirement ......................................................................................... 6

    C.   Payment of Settlement Costs, Attorneys' Fees and Expenses ........... 6

IV.   THE PROPOSED SETTLEMENT SHOULD BE APPROVED ............... 7

    A.   Applicable Legal Standard for Final Approval ................................. 7

    B.   The Requirements for Settlement Approval Are Satisfied ............... 8

        1. The Strength of Plaintiffs' Case ................................................... 8

        2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation ............................................................................ 8

        3. The Risk of Maintaining Class Action Status Throughout the Trial ........... 10

        4. The Amount Offered in Settlement ............................................... 10

        5. The Extent of Discovery Completed and the Stage of Proceedings ............ 11

        6. The Experience and Views of Counsel ......................................... 11

        7. The Reaction of the Class Members to the Proposed Settlement ................. 12

        8. Arm's-Length Negotiation Between the Parties ........................... 12

V.   CERTIFICATION OF A SETTLEMENT CLASS IS PROPER. ........................... 12

    A. Definition of the Proposed Settlement Class ...................................... 13

    B. The Settlement Class Satisfies the Requirements for Certification of a Rule 23 Settlement Class .................................................................... 13

1.  The Settlement Class Satisfies Rule 23(a) ..................................................... 14

2.  The Settlement Class Satisfies Rule 23(b)(3) ................................................ 15

**VI.     THE BEST NOTICE PRACTICABLE WAS PROVIDED TO THE SETTLEMENT CLASS ........................................................................................... 16**

**VII.    CONCLUSION.............................................................................................. 18**

ii                                    Case No.  11-1803 EMC

1

## TABLE OF AUTHORITIES

2

3

**Cases**

4

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) ....................................................19, 20

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ........................................................................................................................12

*Chamberlan v. Ford*, 223 F.R.D. 524 (N.D. Cal. 2004), *aff'd*, 402 F.3d 952 (9th Cir. 2005)...17

*Churchill Village, LLC v. General Elec.*, 361 F.3d 556 (9th Cir. 2004)...........................8, 9, 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)...............................................15

*Fidelity Mortg. Corp. v. Seattle Times Co.*, 304 F. Supp. 2d 1270 (W.D. Wash. 2004) ...........10

*Hanlon v. Chrysler, Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................................... passim

*Hughes v. Microsoft Corp.*, No. 98-1646, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ................................................................................................................................13, 15

*In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) ..........................................................................................................15

*In re Consol. Pinnacle W. Secs. Litig.*, 51 F.3d 194 (9th Cir. 1995) ...........................................8

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)..................................................7

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).........................................20

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) .................................................7

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988)...........................................................13

*Lerwill v. Inflight Motion Pictures,* 582 F.2d 507 (9th Cir. 1978)..............................................18

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234 (9th Cir. 1998) ..............................................12

*Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998). ...................................................................8

*Local Jt. Exec. Bd. v. Las Vegas Sands, Inc.,* 244 F.3d 1152 (9th Cir. 2001) ...........................19

*Lyon v. Chase Bank U.S.A. N.A.*, 656 F. 3d 877 (9th Cir. 2011) ...............................................10

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)...........................................20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................8

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................................14

*Parra v. Bashas', Inc.,* 536 F.3d 975 (9th Cir. 2008) ................................................17

*Rodriguez v. W. Publ. Corp.*, No. CV05-3222 R (MCx), 2007 U.S. Dist. LEXIS 74767 (C.D. Cal. Sept. 10, 2007)........................................................................................11

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)........................................................20

*Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003) ................................12

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)........................................7

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................17

**Statutes**

15 U.S.C. § 1601 ................................................................................................3

28 U.S.C. § 1715(a) ........................................................................................22

Cal. Bus. & Prof. Code § 17200 ........................................................................3

Cal. Bus. & Prof. Code § 17500 ........................................................................3

Cal. Civ. Code § 1750 ......................................................................................3

Fla. Stat. § 501.201 ..........................................................................................3

Md. Code Ann., Com. Law § 13-101........................................................................3

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* § 8:35 ................................................1

**Rules**

Fed. R. Civ. P. 23(a)........................................................................................16

Fed. R. Civ. P. 23(a)(1)....................................................................................17

Fed. R. Civ. P. 23(a)(2)....................................................................................17

Fed. R. Civ. P. 23(a)(4)....................................................................................18

Fed. R. Civ. P. 23(b)(3)..........................................................................5, 16, 18, 19

Fed. R. Civ. P. 23(e)..........................................................................................1

Fed. R. Civ. P. 23(e)(2)....................................................................................7

iv

Case No.  11-1803 EMC

Fed. R. Civ. P. 23(g)(1)..............................................................................................................15

NOTICE OF MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO. IN SUPPORT

1  TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that on February 28, 2013 at 1:30 p.m., or as soon thereafter

3  as the matter may be heard before the Honorable Edward M. Chen, Courtroom 5, 17th Floor,

4  United States District Court, 450 Golden Gate Avenue, San Francisco, California 94102,

5  Plaintiffs Junichiro Sonoda, Lien Duong, and Marvin Kupersmit (collectively "Plaintiffs"),

6  through their attorneys, will and hereby do respectfully move, pursuant to Federal Rule of

7  Civil Procedure 23(e), for an Order granting final approval of the proposed settlement of this

8  putative class action set forth in the Stipulation of Settlement dated September 4, 2012 (the

9  "Stipulation" or "Settlement Agreement").

10  This Motion is based on this Notice of Motion, the following Memorandum of Points

11  and Authorities, the Motion for Preliminary Approval and papers submitted in support, the

12  Proposed Order, all of the prior pleadings and papers in this action, and such additional

13  evidence or argument as may be offered to the Court.  Defendant Amerisave Mortgage

14  Corporation ("Amerisave") does not oppose this Motion, which seeks to effectuate a

15  Settlement Agreement between the parties.

16  For the reasons stated below, Plaintiffs respectfully request that this Court grant final

17  approval to the proposed settlement of this class action.

18  ## I.    INTRODUCTION

19  The efforts of Plaintiffs and their counsel have culminated in a nationwide settlement

20  benefiting a class of at least 124,679 Amerisave customers and co-borrowers, in connection

21  with 81,592 loan applications.  The settlement provides for ***direct mailing*** of cash payments to

22  the class, without the requirement of a claim form, which will result in significantly more class

23  members receiving the monetary and other benefits of the settlement.[1]  The fund will be

---

[1] *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8:35 (4th ed. 2002) ("When a class recovery with no strings attached is distributed in appropriate sums to all identifiable class members, then apart from the possibility of a miniscule number of persons rejecting the tender of the settlement recovery and apart from those class members for whom current addresses cannot be reasonably located, there has been a settlement distribution to the maximum number of identifiable class members entitled to share in it.") & n.3 (noting that "automatic distribution of the class recovery [without a claim form requirement] to eligible

distributed to class members who applied for a mortgage loan from Amerisave, did not obtain a mortgage loan from Amerisave, and paid one or more of the following:  a property appraisal fee, a cancellation fee, or a credit check fee that exceeded the cost of the credit check.   In addition, Plaintiffs have been successful in achieving much of the programmatic relief they sought in this case, as reflected in changes that Amerisave has made to its website.

The Settlement is the result of many months of extensive, arm's-length negotiations between the parties, which negotiations included multiple mediation sessions with the Honorable Edward A. Infante, a former Chief Magistrate Judge of this Court, at JAMS in San Francisco.  On October 24, 2012, the Court granted preliminary approval of the Settlement and approved the proposed notice program, *see* Dkt. No. 97, which has been effectuated.   As explained further below, the Settlement provides an excellent result for the Class, and meets the standard for final approval.

## II.    STATEMENT OF THE CASE

### A.    Procedural Background

On or about March 2, 2011, Plaintiffs Junichiro Sonoda, Lien Duong, and Marvin Kupersmit filed a consumer class action complaint against Amerisave in Superior Court of the State of California, San Francisco titled *Sonoda, et al. v. Amerisave Mortgage Corp.*, Case No. CGC-11-508696 (Dkt. No. 1).   The Complaint alleged that Amerisave misled consumers seeking to lock in mortgage rates, induced them to pay fees in connection with their applications, and then failed to lock in those rates and process their mortgage applications. Additionally, Plaintiffs alleged that Amerisave required consumers to pay a property appraisal fee before providing a Good Faith Estimate, that consumers who wanted to withdraw their application with Amerisave were required to pay a cancellation fee, and that Amerisave charged a credit check fee that exceeded the amount of Amerisave's cost to obtain the credit

---

class members is the preferable option and is more consistent with the objectives of the class action rule").

check.  Plaintiffs sought relief under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*; California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*; the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.*; and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, and also lodged claims for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing.  The Complaint sought damages, restitution, disgorgement, and declaratory and injunctive relief, as well as attorneys' fees, costs and expenses.

Amerisave filed a notice of removal to this Court on April 13, 2011 (Dkt. No. 1). Amerisave filed an Answer to the Complaint on May 20, 2011 (Dkt. No. 17).  On that date, Amerisave also filed a Partial Motion to Dismiss and a Motion to Transfer Venue (Dkt. No. 18).  After hearing argument on both motions on June 29, 2011, this Court denied the Motion to Transfer Venue, in an Order dated July 6, 2011 (Dkt. No. 35), and it granted the Motion to Dismiss in part and denied it in part, in an Order dated July 8, 2011 (Dkt. No. 41).  Amerisave filed a motion for interlocutory appeal on July 22, 2011 (Dkt. No. 47), which this Court denied in an Order dated September 7, 2011 (Dkt. No. 63).

Plaintiffs filed an Amended Complaint on August 8, 2011 (Dkt. No. 56).  Amerisave answered the Complaint on August 25, 2011, denying the allegations therein, and lodging several affirmative defenses (Dkt. No. 61).

### B.    Discovery and Mediation

This Court issued a Case Management Scheduling Order on August 3, 2011, setting out a schedule for discovery and briefing on class certification (Dkt. No. 54).  The parties then engaged in extensive discovery:   Plaintiffs served Amerisave with document requests, interrogatories, requests for admission, and two Rule 30(b)(6) deposition notices, concerning the company's mortgage operations and its information technology, in July 2011.  Dkt. No.

86-3 ¶ 9.  Amerisave served its responses soon thereafter, and produced over 9,000 pages of documents on a rolling basis.  *Id.* ¶ 10.  Amerisave designated five witnesses to testify as Rule 30(b)(6) corporate representatives, and these witnesses were deposed in October 2011.  *Id.*  In addition, Amerisave noticed and took the depositions of the three plaintiffs.  *Id.*  Plaintiffs hired a consulting expert to help analyze the claims in the case.  *Id.*

In the fall of 2011, the parties began discussing a potential resolution of the case and put the active litigation on hold.  *Id.* ¶ 11.  The parties began mediation in San Francisco on November 7, 2011 before the Honorable Edward A. Infante (Ret.) of JAMS.  *Id.* ¶ 12; Dkt. No. 86-6 ¶ 17.  A second mediation session was held with Judge Infante on April 26, 2012, where the parties agreed on a resolution of Plaintiffs' claims, as set forth herein.  Dkt. No. 86-6 ¶ 17.  Many of the pivotal terms of a settlement were reached at this session, but the parties subsequently engaged in difficult and protracted arm's-length negotiations regarding a number of unresolved issues, including the scope of the releases and the language of the Settlement Agreement, notices, and proposed preliminary and final approval orders.  *Id.*  These negotiations extended for almost five months and involved numerous conference calls mediated by Judge Infante, extensive correspondence, and the exchange of many drafts of settlement documents.  *Id.*

These negotiations were hard-fought, resulting, in part, from the extent of the release with respect to continuing communications between members of the settlement class and representatives of the Defendants and also with respect to the timing and substance of those communications.  *Id.* ¶ 18.  The parties negotiated and reached agreement concerning attorneys' fees, reimbursement of expenses, and service awards only after reaching agreement on all other material terms of this settlement.  *Id.*

C.      **Preliminary Approval**

The Court held a hearing on preliminary approval on October 12, 2012.  Following the hearing, the Court granted preliminary approval of the Settlement and provisionally certified a

national settlement class ("Settlement Class" or "Class"), pursuant to Fed. R. Civ. P. 23(b)(3). *See* Dkt. No. 97. The Court also approved the parties' proposed Notice to the Settlement Class, appointed A.B. Data, Ltd. ("A.B. Data") to supervise and administer the notice plans, and approved Mehri & Skalet, PLLC, the Sturdevant Law Firm, Donovan Axler, LLC, and Rukin, Hyland, Doria & Tindall as Class Counsel. *Id.* at 2-4.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    Relief to the Settlement Class

The proposed settlement provides that Amerisave shall provide cash payments to Settlement Class Members from a $3.1 million settlement fund ("Settlement Fund"). Payment for court-approved attorneys' fees and costs ($775,000 will be proposed), court-approved enhancement awards to the Class Representatives ($5,000 each for a total of $15,000), and fees and expenses (estimated to be $70,000) of the Settlement Administrator will be deducted from the maximum total payment. The remaining monies in the Settlement Fund (projected to be $2.24 million) will be distributed to participating class members.

All Settlement Class Members shall be paid based on a *pro rata* percentage of the alleged impermissible fees that each actually paid as a refund. Based on information provided by Amerisave from its database, the total amount of improper fees charged is $17,351,767.50. This figure was derived by combining $14,732,882.00 in appraisal fees, $1,618,840.50 in fees for the credit check in excess of its cost, and $1,000,045.00 in cancellation fees. The fund to be distributed is $2.24 million. Declaration of Craig Briskin ISO Final Approval ("Briskin Decl.") ¶ 3. Therefore, the *pro rata* share is approximately 12.909%. Thus, a Class Member who paid a $500 cancellation fee will receive approximately $64.55; a class member who paid a $600 appraisal fee will receive about $77.45; a class member who paid $27 in excess of the credit check cost will receive approximately $3.49. *Id.* ¶ 10.

In addition to the monetary relief obtained, after the filing of this case, Amerisave made significant changes to the practices at issue in the litigation. For example, Amerisave

now charges only the actual amount it pays for a credit check; it tells customers that they must "authorize payment" for an appraisal that will be charged only after they receive a Good Faith Estimate; and Amerisave has stopped charging cancellation fees. *See id.* ¶ 11.

### B.    Direct Payment to Class Members With No Claims Form Requirement

In order to maximize the participation of all class members and to provide the most relief to all class members, the settlement is non-claims made. All class members who do not opt out of the settlement will receive a check for their portion of the Settlement. In the event there are any settlement checks that are uncashed, unclaimed, or undeliverable after 180 days, Amerisave will receive a refund of up to $100,000 of this unclaimed amount. In the event there is any unclaimed amount over $100,000, any funds remaining shall be paid *cy pres* to organizations approved by the Court. The parties agree to propose that the Court select Equal Justice Works ("EJW") and/or the Center for Responsible Lending ("CRL") as the *cy pres* recipient(s). *See* Dkt. No. 92. EJW is a non-profit organization that funds fellowships for lawyers, and will target any *cy pres* funds received to fund lawyers working to protect consumers from mortgage fraud. *See* www.equaljusticeworks.org. CRL is a non-profit, non-partisan organization that works to protect homeownership and family wealth by fighting predatory lending practices. *See* http://www.responsiblelending.org/.

### C.    Payment of Settlement Costs, Attorneys' Fees and Expenses

All costs of notice and all costs associated with administering the Settlement will be paid from the Settlement Fund. Amerisave does not oppose service awards of $5,000 to each of the three Class Representatives and an award to Class Counsel of attorneys' fees and expenses not to exceed $775,000,[2] subject to Court approval, all of which are to be paid out of the Settlement Fund.[3]

---

[2]     Class counsel have filed a motion for approval of attorneys' fees and expenses concurrent with this motion.

[3]     "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re S. Ohio Correctional Fac.*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *see also Van Vranken v.*

1    **IV.      THE PROPOSED SETTLEMENT SHOULD BE APPROVED.**

2          **A.      Applicable Legal Standard for Final Approval**

3          The Court may approve a class settlement "after a hearing and on finding that it is fair,

4    reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Mego Fin. Corp. Sec. Litig.*,

5    213 F.3d 454, 458 (9th Cir. 2000) (requiring a district court, when considering whether to give

6    final approval to a proposed class action settlement, to determine whether a proposed

7    settlement is "fundamentally fair, adequate, and reasonable").   Settlements of complex class

8    actions are strongly favored prior to trial.  *See Churchill Village, LLC v. General Elec.*, 361

9    F.3d 556, 576 (9th Cir. 2004).

10         Class action settlements are entitled to a presumption of fairness, where experienced

11   class counsel are involved, and the parties reach settlement through arm's-length negotiations

12   after conducting relevant discovery.  *See In re Consol. Pinnacle W. Secs. Litig.*, 51 F.3d 194,

13   197 n.6 (9th Cir. 1995); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528

14   (C.D. Cal. 2004); *Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 U.S. Dist. LEXIS

15   24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).  That is certainly

16   the case here, as set forth in the attached Declarations and herein.

17         Separate and apart from this presumption of fairness, this settlement is "fair, reasonable

18   and adequate" under the standard applied in the Ninth Circuit.  "It is the settlement taken as a

19   whole, rather than the individual component parts, that must be examined for overall fairness."

20   *Hanlon v. Chrysler, Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

21         Courts in the Ninth Circuit generally consider eight factors in making this

22   determination:  (1) the strength of the plaintiff's case, (2) the risk, expense, complexity and

23   likely duration of further litigation, (3) the risk of maintaining class action status throughout

24   the trial, (4) the amount offered in settlement, (5) the extent of discovery and the stage of the

25   proceedings, (6) the experience and views of counsel, (7) the reaction of the class members to

26   _____

27   *Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation
     award).

28

the proposed settlement, and (8) that the settlement is not the product of collusion among the negotiating parties. *Churchill Village*, 361 F.3d at 575-76. *See also Hanlon,* 150 F.3d at 1026. The Ninth Circuit consistently has applied this non-exclusive list of eight factors to assess whether, taken as a whole, a settlement is fair. *See, e.g.*, *Churchill Village*, 361 F.3d at 575-76.

### B.     The Requirements for Settlement Approval Are Satisfied.

Under the above-enumerated factors set forth by the Ninth Circuit, it is clear that the Settlement should be finally approved.

#### 1.   The Strength of Plaintiffs' Case

The heart of Plaintiffs' claims is that Amerisave misled consumers seeking to lock in mortgage rates and then failed to lock in those rates and process their loan applications. Additionally, the lawsuit claimed that Amerisave required consumers to pay a property appraisal fee before providing a Good Faith Estimate, that consumers who wanted to withdraw their application with Amerisave were required to pay a cancellation fee that Amerisave had never warned them about, and that Amerisave charged a credit check fee that exceeded the amount of Amerisave's cost to obtain the credit check.  Plaintiffs contend that they will be able to establish that Amerisave's practices were uniform and that each member of the class was subject to the same illegal practices by Amerisave, that they are entitled to both statutory and actual damages under TILA, and damages under their states' consumer protection acts.[4]

#### 2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs and Class Counsel believe that their claims are meritorious and that they would ultimately prevail on a class-wide basis, Amerisave has raised, and would continue to raise, challenges to the legal and factual basis for these claims.  Amerisave vigorously denies that Amerisave misled consumers or improperly charged any fees.  The proposed settlement eliminates the risks of continued litigation, including the risk of no recovery from

---

[4] *See Lyon v. Chase Bank U.S.A. N.A.*, 656 F. 3d 877 (9th Cir. 2011)

1   Amerisave.  Amerisave also contends that Plaintiffs would need to prove detrimental reliance

2   in order to receive actual damages under TILA, and that Amerisave is not liable for statutory

3   damages under TILA because the violation at issue is not the type for which statutory damages

4   are available.[5]

5        Plaintiffs recognize that a class might not be certified or that a trier of fact might find

6   that they are not entitled to class-wide damages.  Briskin Decl. ¶¶ 19-21.  Defendants have

7   indicated that they would argue that at least some of Plaintiffs' claims are not amenable to

8   class  treatment,  because  Settlement  Class  Members  may  have  received  differing

9   representations from varying Amerisave sources and experienced denial of their mortgage

10  loans for potentially different reasons.  Dkt. No. 88 at 6-8.  Without conceding that any of

11  these results would be correct or appropriate, Plaintiffs recognize the risk of possible adverse

12  outcomes.  Briskin Decl. ¶¶ 19-24.

13       The  Settlement  Agreement  proposed  by  the  parties  provides  the  certainty  of  cash

14  payments to the Class Members.  *Id.* ¶ 24.  If this case is not settled, it would be necessary to

15  continue prosecuting the litigation against Amerisave through a trial and, even if Plaintiffs are

16  successful there, through the appeals Amerisave most likely would file.  *Id.* ¶ 23.  Thus, any

17  potential benefits to the class would be delayed for years if the case proceeds in litigation.

18       Continued litigation may well achieve no greater benefit for the Settlement Class and

19  could possibly result in no benefit at all.  *Id.* ¶ 24.  With this in mind, the advantages of the

20  proposed  settlement  could  exceed  what  is  likely  to  occur  should  this  case  proceed  on  a

21  litigation track.   For this reason, the strength of Plaintiffs' case and the risk, expense,

22  complexity, and likely duration of further litigation suggest that the proposed Settlement

23  Agreement is fair, adequate, and reasonable.  *Id.* ¶ 26.

24

25  [5] *See* Briskin Decl. ¶ 18.  A separate provision of TILA invoked by Plaintiffs, 12 C.F.R. §
    226.24, falls under Part C of the Act, which is not referenced in the civil liability provision in
26  Section 1640.  Thus, it is unlikely to support any additional damages or penalties.  *See Fidelity
    Mortg. Corp. v. Seattle Times Co.*, 304 F. Supp. 2d 1270, 1273-74 (W.D. Wash. 2004).

27

28

### 3. The Risk of Maintaining Class Action Status Throughout the Trial

Plaintiffs believe that the common treatment of Class members by Amerisave would make this case amenable to class certification.  Plaintiffs also are aware of the arguments Amerisave would likely make in opposition to a motion for class certification, including that Class Members may have had their mortgage loans denied for different reasons.  Dkt. No. 88 at 6-8.  Even if Plaintiffs succeeded in obtaining class certification, subsequent developments, unknown to the parties at this time, could result in the Court decertifying the class, *see Rodriguez v. W. Publ. Corp.*, No. CV05-3222 R (MCx), 2007 U.S. Dist. LEXIS 74767, at *29 (C.D. Cal. Sept. 10, 2007), or certifying a smaller class than the Settlement Class.

### 4. The Amount Offered in Settlement

In light of the uncertainties of trial and the difficulties in proving any alleged defect or misrepresentation, the value of the settlement is certainly adequate.  Amerisave is offering to provide Settlement Class Members with the immediate benefit of substantial cash refunds, paid directly and without any requirement to submit a claim form, creating a total benefit of $3.1 million to the class.  This makes the amount recovered comparable in some respects to a larger fund that would feature a lower claims rate, had there been a claims process requirement.

The Settlement provides substantial value to the Settlement Class.  $3.1 million should be compared against a maximum total recovery that Plaintiffs estimate to be approximately $17,351,767.50.  *See* Briskin Decl. ¶ 10.  "[T]he very essence of a settlement is . . . a yielding of absolutes and an abandoning of highest hopes."  *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation omitted).  Settlement must be evaluated "in light of the attendant risks with litigation."  *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55,

64 (S.D.N.Y. 2003).[6]   Thus, it is very possible that Plaintiffs would succeed in recovering a smaller amount of damages if they rejected the settlement and continued to litigate the case.

### 5.   The Extent of Discovery Completed and the Stage of Proceedings

The parties reached settlement after litigating a motion to dismiss and to transfer venue, substantial document production, interrogatories, depositions of Amerisave's corporate representatives and of the three Plaintiffs, and multiple arm's-length mediation sessions, in which both sides presented and responded to briefing.  Final Approval of the Settlement at this time will obviate the need for a continuation of expensive and time-consuming fact and expert discovery, briefing and argument of Plaintiffs' motion for class certification, and trial on the merits.  Plaintiffs and their counsel have conducted substantial discovery so that they could make an informed decision about the settlement.

### 6.   The Experience and Views of Counsel

Class Counsel supports the approval of the settlement – a fact that confers a presumption of fairness on the proposed settlement.  *See Hughes v. Microsoft Corp.*, No. 98-1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("In determining whether to approve a settlement, the Court keeps in mind the unique ability of class counsel to assess potential risks and rewards of litigation."); *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (when the counsel recommending approval of the settlement are competent and experienced, significant weight may be given to their opinion).  Class Counsel are experienced class-action attorneys who have successfully tried complex class cases in the past.  *See* Dkt. Nos. 86-3 to 86-6.  After weighing the risks and benefits associated with trying this case or settling it according to the terms of the proposed settlement, Class Counsel has reached the opinion that settlement is in the best interest of the Class.  *Id.*  The Court should afford that determination considerable weight.

---

[6] "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."  *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

NOTICE OF MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO. IN SUPPORT

### 7.   The Reaction of the Class Members to the Proposed Settlement

Class notice has been emailed or mailed to approximately 80,889 potential Settlement Class Members.  *See*  Declaration of Anya Verkhovskaya Regarding Notice Administration ¶ 11 ("Verkhovskaya Decl.").  A website (https://www.amerisavemortgagesettlement.com/) and a toll-free telephone number (1-866-905-8102) were created to answer questions.  *Id.* ¶¶ 19, 21.  As of this date, only one class member has filed an objection, *see* Dkt. No. 98, and five have opted out (the deadline is January 11, 2013).   Verkhovskaya Decl. ¶ 22.

### 8.   Arm's-Length Negotiation Between the Parties

The trial court's evaluation of the settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).   Here, the proposed settlement is the product of extensive arm's-length negotiations among well-informed and sophisticated counsel.  *See* Briskin Decl. ¶¶ 17-18.  Both sides demonstrated by their actions that they were fully prepared to litigate this case through final judgment if no acceptable resolution could be reached.  In addition, the fact that the settlement was mediated with the active involvement of a former member of this Court, the Honorable Edward A. Infante (Ret.), further demonstrates the non-collusive nature of the settlement.[7]  *See* Dkt. No. 86-6 ¶ 17.

## V.   CERTIFICATION OF A SETTLEMENT CLASS IS PROPER.

Judicial policy strongly favors settlements, and it favors them even more strongly where the case is a class action.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

---

[7] *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *17 (settlement mediated with assistance of settlement judge demonstrates lack of fraud or collusion).  *See also In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685, at *10 (N.D. Cal. May 17, 2011) ("Because the settlement is the product of a formal mediation session and several months of negotiations conducted at arm's length, the Court is satisfied that the settlement is not the product of collusion."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (same).

1    Cir. 1992).  In its Preliminary Approval Order, the Court provisionally certified the Settlement

2    Class and determined at that time that the proposed settlement was "fair, reasonable, and

3    adequate such that notice thereof should be given to members of the Settlement Class."  Dkt.

4    No. 97 at 1.  The Court further found that the forms and methods of dissemination of the

5    notice "provide the best notice practicable under the circumstances and shall constitute due

6    and sufficient notice to all persons entitled thereto."  *Id.* at 3.  The Court also found that

7    Plaintiffs should serve as Class Representatives, and appointed Plaintiffs' Counsel to serve as

8    Class Counsel pursuant to Rule 23(g)(1).  *Id.* at 2.

9         **A.    Definition of the Proposed Settlement Class**

10        Plaintiffs request that the Court, pursuant to Fed. R. Civ. P. 23(b)(3), finally certify the

11   Settlement Class, defined as follows:

12            All individuals and entities who (whether as a borrower or a co-
             borrower) made an application for a mortgage loan to Defendant,
13            did not obtain a mortgage loan from Defendant based on that
             application, and in connection with that application: (i) were
14            charged a credit check fee by Defendant that exceeded the amount
             of Defendant's cost to obtain the credit check and paid said fee
15            between July 30, 2009 and May 9, 2011; and/or (ii) were charged a
             property appraisal fee and paid the appraisal fee to Defendant
16            between August 18, 2008 and the date the Preliminary Approval
             Order is entered; and/or (iii) were charged a cancellation fee by
17            Defendant and paid said fee to Defendant between August 8, 2007
             and June 5, 2012.
18
             Excluded from the class are (i) all judicial officers in the United
19            States and their families; (ii) all officers, directors, employees or
             counsel of Amerisave; (iii) all persons who have already settled or
20            otherwise compromised and released these claims against the
             Released Parties; (iv) all persons who previously received a full
21            refund of the disputed credit check, appraisal, and/or cancellation
             fees; (v) all persons who previously had the full amount of the
22            disputed credit check and/or appraisal fees applied to a subsequent
             mortgage loan application that was accepted and the mortgage loan
23            was funded; and (vi) all persons who Opt-out.

24        **B.    The Settlement Class Satisfies the Requirements for Certification of a Rule
                 23 Settlement Class.**
25
          The Ninth Circuit strongly encourages the approval of class action settlements and
26
     certifying a settlement class is part of that process.  *Churchill Village*, 361 F.3d at 572.  For the
27

28

following reasons, the Court should finally certify the Settlement Class as part of a final approval order.

### 1. The Settlement Class Satisfies Rule 23(a).

Fed. R. Civ. P. 23(a) is made up of four subparts, all of which are satisfied here. First, the size of the Settlement Class – at least 124,679 consumers – renders joinder impracticable, and the numerosity requirement is satisfied. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" (quoting Fed. R. Civ. P. 23(a)(1)).

Second, Rule 23(a)(2)'s requirement of commonality is satisfied here because the Plaintiffs' allegations stem from a claim of common misleading actions and improper fees charged by Amerisave. Complaint ¶¶ 81-83. *See Chamberlan v. Ford*, 223 F.R.D. 524, 526 (N.D. Cal. 2004), *aff'd*, 402 F.3d 952 (9th Cir. 2005); *see also Parra v. Bashas', Inc.,* 536 F.3d 975, 978 (9th Cir. 2008) (commonality is a "permissive[]" and "flexible" standard). Among other things, Plaintiffs raised the question of whether requiring customers to pay for a property appraisal, or an amount in excess of the cost of checking their credit, before receiving a Good Faith Estimate, is a violation of the Truth in Lending Act and of state consumer protection laws. In essence, they all have "suffered the same injury," based on a "common contention," which is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (construing *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 145, 156 (1982)).

Third, the typicality requirement is met in this case. The Class Representatives have claims similar to and typical of the rest of the Settlement Class, because they all claim – and all have the same interest in redressing – injuries that stemmed from improper fees that Amerisave assessed in connection with their loan applications. Complaint ¶¶ 81-83. The Class Representatives' injuries are not based on any conduct that is unique to them.

Fourth, the adequacy requirement under Rule 23(a)(4), which requires that the named Plaintiffs and proposed Class Counsel be able to "fairly and adequately protect the interests of

14                                    Case No. 11-1803-EMC

the class," is satisfied.   In this case, the parties are not aware of any conflicts of interest between the named Plaintiffs and the absent Class Members from the standpoint of assessing the fairness of the proposed Settlement.  *See Lerwill v. Inflight Motion Pictures,* 582 F.2d 507, 512 (9th Cir. 1978).   The record shows that Plaintiffs and Class Counsel have vigorously prosecuted this action on behalf of the Class.  *See Hanlon*, 150 F.3d at 1020.  Class Counsel are experienced class-action attorneys who have successfully tried complex class cases in the past.  *See* Dkt. Nos. 86-3 to 86-6.  This Court has already found that Class Counsel and the Class Representatives were adequate representatives of the Settlement Class, in appointing them to represent the Settlement Class.  *See* Dkt. No. 97 at 2.

### 2. The Settlement Class Satisfies Rule 23(b)(3).

The Settlement Class satisfies the requirements of Rule 23(b)(3): predominance (common questions predominate over individual ones) and superiority (class resolution is superior to other methods of adjudication).  Predominance is satisfied here, because there are common class-wide issues as to the alleged improper fees charged by Amerisave, which focus completely on the practices of Amerisave, not on the plaintiffs or the class.  Complaint ¶¶ 71-73.  Moreover, damages resulting from the alleged illegality can be ascertained objectively and mathematically, based on records maintained by Amerisave, and do not require complex individual inquiries.

Class treatment here is also superior to any other method of adjudication.   In determining superiority, the Rule provides four non-exclusive factors: (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action.  The superiority requirement is satisfied where there are "multiple claims for relatively small individual sums."  *Local Jt. Exec. Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).  To the knowledge of Class Counsel, no

15                          Case No.  11-1803-EMC

class members have filed any individual litigation concerning the matters raised here.  All signs point to this litigation as the best and *only* avenue to obtaining relief for the class. Because the financial loss to any individual Class Member is small, relative to the cost of litigation, very few if any class members would pursue litigation on their own.

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court recognized that the court need not assess whether the manageability requirement of Rule 23(b)(3) is met in the settlement context, because the parties do not propose to litigate the case. *Id.* at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no 'trial'").  The distinction between a certification of a settlement class and one for litigation becomes important when considering whether variations in state law would make certification inappropriate.  Under well-established law, settlement of a nationwide class action is not defeated by the presence of variations in state law, regardless of whether variations in state law may preclude certification of a class action in the context of *litigation*.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529-30 (3d Cir. 2004); *Hanlon*, 150 F.3d at 1019, 1022-23.

Accordingly, recognizing that the parties here propose a nationwide Settlement Class – not a nationwide litigation class – this Court need only inquire whether the proposed Settlement Class is sufficiently cohesive with respect to the relevant factual and legal issues as to make a class-wide settlement process fair.  *See Amchem*, 521 U.S. at 623; *In re Warfarin*, 391 F.3d at 528.  The standards for certification of a nationwide Settlement Class in the context of granting preliminary settlement approval are satisfied here.

## VI.     THE BEST NOTICE PRACTICABLE WAS PROVIDED TO THE SETTLEMENT CLASS.

On October 24, 2012, the Court approved an extensive direct notice plan (the "Notice.").  *See* Dkt. No. 97.  This notice plan was more than sufficient to satisfy the

16                          Case No.  11-1803-EMC

requirements of due process because it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950), or exclude themselves from the class, *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). The parties designed the Notice plan to inform the greatest number of Settlement Class members practicable, thereby maximizing the opportunity for Settlement Class members to review and understand the Settlement and to respond appropriately if they so choose. The Notice plan involved: (1) emailing the Email Notice to all Class Members at the last known email address that Amerisave has for each Class Member; (2) for any Settlement Class Members that returned an undeliverable email notification, sending the Postcard Notice to the last known mailing address of Settlement Class Members for whom the Email Notice was permanently "bounced back" from or was otherwise identified as having been undeliverable to the Settlement Class Member's email server, (3) establishing an automated toll-free telephone line (1-866-905-8102) ("Toll-Free Number") and interactive voice response (IVR) system; (4) creating a Settlement Website at https://www.AmerisaveMortgageSettlement.com; and (5) uploading case-related documents to A.B. Data's website. *See* Verkhovskaya Decl. ¶ 4.

Both the Email Notice and the Postcard Notice provided recipients with the website address of the Settlement Website, the Toll-Free Number that could be used to request copies of the Long-Form Notice, and the address of the Class Counsel to whom class members could write for information concerning the Settlement. The Long-Form Notice was made available on the Settlement Website. As of today's date, there were 3,964 hits to the Settlement Website and 193 calls received at the toll-free number. *Id.* ¶¶ 19-21. The Settlement Website provides consumers with information about the settlement's terms. *Id.* ¶ 21.

The Long-Form Notice describes the nature, history, and status of the Litigation, sets forth the Settlement Class definition, the class claims and issues, discloses the right of people

who fall within the Settlement Class definition to exclude themselves from it, as well as the deadline and procedure for doing so, and warns of the binding effect of the settlement approval proceedings on people who stay in the Settlement Class.  In addition, the Notice describes the Settlement, sets forth the benefits Plaintiffs are proposing to distribute among the Settlement Class, sets out the amount of attorneys' fees and expenses that Plaintiffs' Counsel intend to seek in connection with final settlement approval, provides contact information for Counsel, and summarizes the reasons the Parties are proposing the settlement.  The Notice discloses the date, time, and place of the formal fairness hearing as well as the procedures for commenting on the settlement and appearing at the hearing.  The contents of the Notice therefore satisfy all applicable requirements.

Amerisave has confirmed that it also provided notice of this Settlement to state and federal officials in accordance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a).  Dkt. No. 99.  Amerisave mailed the CAFA notice package to state and federal officials on September 13, 2012. *See id.*

The court-appointed settlement administrator diligently sent notice to everyone for whom it had or could obtain an email or mail address.  The data files contained 104,345 records of individuals and entities who paid a fee (the "Class List").  A.B. Data reviewed the Class List data and redacted duplicate records to create a list of 80,889 Settlement Class Members (the "Email List").  Verkhovskaya Decl. ¶¶ 8, 10.

## VII.   CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request that this Court approve the proposed Settlement.

Respectfully submitted,

Dated:  December 21, 2012                    By:    */s/ Craig L. Briskin*

                                             Craig L. Briskin*
                                             Steven A. Skalet*
                                             Taryn Wilgus Null (985724)
                                             MEHRI & SKALET, PLLC
                                             1250 Connecticut Ave., NW, Suite 300

Washington, DC  20036
Telephone:  (202) 822-5100
Facsimile:  (202) 822-4997

James C. Sturdevant (SBN 94551)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA  94104
Telephone:  (415) 477-2410
Facsimile:  (415) 477-2420

Michael D. Donovan*
Noah Axler*
DONOVAN SEARLES & AXLER, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone:  (215) 732-6067
Facsimile:  (215) 732-8060

Whitney Stark (SBN 234863)
RUKIN, HYLAND, DORIA & TINDALL
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone:  (415) 421-1800
Facsimile:  (415) 421-1700

Attorneys for Plaintiffs and the Putative Class

*Admitted Pro Hac Vice*

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on December 21, 2012, I authorized the electronic filing of the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification

4

of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and

5

I hereby certify that I caused to be mailed the foregoing document or paper via the United

6

States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice

7

List.

8

I certify under penalty of perjury under the laws of the United States of America that

9

the foregoing is true and correct.  Executed on December 21, 2012.

10

/s/ Craig L. Briskin

Craig L. Briskin

11

12

MEHRI & SKALET, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC  20036
Telephone:  (202) 822-5100
Facsimile:  (202) 822-4997
E-mail:    cbriskin@findjustice.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20                         Case No.  11-1803-EMC