MEHRI & SKALET, PLLC
STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
TARYN WILGUS NULL (SBN 985724)
1250 Connecticut Ave NW, Suite 300
Washington, DC  20036
Telephone:  202/822-5100
Fax:  202/822-4997
sskalet@findjustice.com
cbriskin@findjustice.com
twilgusnull@findjustice.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNICHIRO SONODA, LIEN DUONG, and MARVIN KUPERSMIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERISAVE MORTGAGE CORPORATION, a Georgia corporation,<br><br>Defendant. | Case No. C 11-01803 EMC<br><br>DECLARATION OF CRAIG L. BRISKIN IN SUPPORT OF MOTION FOR FINAL APPROVAL<br><br>Date:  February 28, 2013<br>Time:  1:30 p.m.<br>Judge:  Honorable Edward M. Chen<br>Courtroom: 5 |

I, Craig L. Briskin, declare as follows:

1. I am a partner with the law firm of Mehri & Skalet, PLLC, and I represent Plaintiffs in this action.  I submit this Declaration in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.  I have personal knowledge of the matters stated herein and, if called upon, could and would competently testify thereto.

1  2. This declaration sets forth the nature of the claims asserted, the principal proceedings to date, the legal services provided by Plaintiffs' Counsel, the settlement negotiations, and why the Settlement is fair, reasonable, and adequate.

3. The proposed settlement provides that Amerisave shall provide cash payments to Settlement Class Members from a $3.1 million settlement fund ("Settlement Fund"). Payment for court-approved attorneys' fees and costs ($775,000, or 25% of the Settlement Fund, is proposed), court-approved enhancement awards to the Class Representatives ($15,000), and fees and expenses (estimated to be $70,000) of the Settlement Administrator will be deducted from the maximum total payment. The remaining net settlement amount ($2.24 million) will be distributed to participating class members.

4. The Settlement represents an outstanding result for the Settlement Class, satisfies the "fair, reasonable, and adequate" standard required for approval under Fed. R. Civ. P. 23(e)(2) and 23.1(c), and thus warrants approval by the Court. The Settlement reflects the assumed risk, effort, and vigorous prosecution of the case by Plaintiffs' Counsel against Amerisave.

5. Counsel for Plaintiffs carefully investigated this matter before filing their actions nearly three years ago, and have vigorously advanced their claims since then. Among other things, Plaintiffs' Counsel (a) spoke with numerous consumers and plaintiff-consumers concerning their problems with Amerisave; (b) reviewed and analyzed publicly filed documents, consumer complaints, financial reports, and press releases concerning Amerisave; (c) located and interviewed numerous potential witnesses; (d) drafted pleadings, discovery requests, and other case management documents; (e) thoroughly researched the law pertinent to the claims and defenses asserted, including class certification; (f) engaged in multiple arms' length mediation sessions with Apple and an experienced mediator, the Honorable Edward A. Infante (Ret.), which facilitated an efficient resolution of the case; and (g) worked collaboratively with Defendant's Counsel to implement the Court-approved notice program.

6. The settlement of this Litigation was achieved through the substantial efforts of Plaintiffs' Counsel, who litigated this case and was able to achieve benefits for the Class through

the proposed settlement. Based on Plaintiffs' Counsel's extensive investment of time and resources, as well as Plaintiffs' Counsel's belief that the claims asserted against Amerisave have substantial merit, Plaintiffs' Counsel had incentives to continue to prosecute the Litigation. The Settlement was only accomplished when Plaintiffs' Counsel was satisfied that the recovery and timing of the specific benefits for the Class compared very favorably to the risks that the Class would not be certified and the uncertainty faced through summary judgment, trial, and appeal.

7. The Settlement was negotiated on both sides by experienced counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses. The Settlement confers substantial and immediate benefits on the Class, and eliminates the risks involved in seeking certification of a class and in proving liability and damages, as well as the further risk, delay, and expense of trial and appeal. Plaintiffs' Counsel respectfully submits that under these circumstances, the Settlement is in the best interest of the Class and should be approved as fair, reasonable, and adequate.

8. Amerisave has informed me that according to their records, the alleged overcharges were paid by 127,407 class members, which includes borrowers and co-borrowers, in connection with 84,320 unique loan applications.

### Settlement Benefits

9. As detailed in the Class Notice approved by the Court and the Settlement Agreement, the principal settlement terms are set forth below.

10. The proposed settlement provides that Amerisave shall provide cash payments to Settlement Class Members from a $3.1 million settlement fund ("Settlement Fund"). Payment for court-approved attorneys' fees and costs ($775,000 will be proposed), court-approved enhancement awards to the Class Representatives ($15,000), and fees and expenses of the Settlement Administrator (projected to be $70,000) will be deducted from the maximum total payment. The remaining net settlement amount ($2.24 million) will be distributed to participating class members. All Settlement Class Members shall be paid based on a flat percentage of the alleged impermissible fees that each actually paid as a refund. Based on

3

1  information provided by Amerisave from its database, the total amount of improper fees charged
2  is $17,351,767.50.  This figure was derived by combining $14,732,882.00 in appraisal fees,
3  $1,618,840.50 in fees for the credit check in excess of its cost, and $1,000,045.00 in cancellation
4  fees.  Therefore, the pro rata share is approximately 12.909%.  Thus, a Class Member who paid a
5  $500 cancellation fee will receive approximately $64.55; a class member who paid a $600
6  appraisal fee will receive about $77.45; and a class member who paid $27 in excess of the credit
7  check cost will receive approximately $3.49.

8        11.    In addition to the monetary relief obtained, after the filing of this case, Amerisave
9  made significant changes to the practices at issue in the litigation.  *See* Settlement Agreement, ¶
10 68 (Amerisave now charges only the actual amount it pays for a credit check, informs customers
11 that they must "authorize payment" for an appraisal that will be charged only after they receive a
12 Good Faith Estimate, and no longer charges cancellation fees).

13 <center>**Preliminary Approval and Notice of Settlement**</center>

14       12.    On October 12, 2012, after the parties had finalized the terms of the Settlement
15 Agreement, the Court held a hearing on Plaintiffs' motion for preliminary approval.  Following
16 the hearing, the Court granted preliminary approval of the Settlement pursuant to Fed. R. Civ. P.
17 23(b)(3), and provisionally certified a national settlement class.  *See* Dkt. No. 97.  The Court also
18 approved the parties' proposed Notice to the Settlement Class, appointed A.B. Data, Ltd. ("A.B.
19 Data") to supervise and administer the notice plans, and approved Mehri & Skalet, PLLC, the
20 Sturdevant Law Firm, Donovan Axler, LLC, and Rukin, Hyland, Doria & Tindall as Class
21 Counsel.  *Id.* at 2-4.

22       13.    The Preliminary Approval Order set a schedule for mailing and emailing the
23 Notice directly to members of the Settlement Class.

24       14.    Amerisave has caused notice of the Settlement to be provided to the required
25 officials in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715(b) and mailed the
26 CAFA notice package to the required officials on September 13, 2012.  *See* Dkt. No. 99.

27
28

1        15.     The Notice informed consumers of the terms of the Settlement, and further that written objections to the proposed Settlement and/or Plaintiffs' Counsel's fees and expenses must be filed with the Court and sent to the parties' counsel, so that counsel receive the objections no later than January 11, 2013.

         16.     As detailed in the concurrently filed Verkhovskaya Declaration, the Class reaction to date overwhelmingly supports the Settlement.

### Factors to be Considered in Support of Settlement

         17.     The principal terms of the Settlement were fairly, honestly, and aggressively negotiated by counsel for all parties over a period of about ten months.

         18.     As set forth above, the Settlement was reached after arm's-length negotiations between Plaintiffs' Counsel and counsel for Amerisave with the assistance of Judge Infante. Throughout the negotiations, Amerisave consistently denied any liability, asserting that Amerisave did not mislead consumers or improperly charge any fees. Amerisave also contends that Plaintiffs would need to prove detrimental reliance in order to receive actual damages under TILA, that Amerisave is not liable for statutory damages under TILA because the violation at issue is not the type for which statutory damages are available, that the Consumer Legal Remedies Act does not apply to the disputed conduct in this case, and that Plaintiffs may not seek restitution of appraisal fees that Amerisave passed on to third-party appraisers. At the same time, Plaintiffs' Counsel advanced the Plaintiffs' position that Amerisave's practices were uniform and that each member of the class was subject to the same illegal practices by Amerisave, that they are entitled to both statutory and actual damages under TILA and damages under their states' consumer protection acts, and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interests of the class. All parties were represented by counsel with extensive experience in consumer and class action litigation.

         19.     While Plaintiffs' Counsel believes that Plaintiffs had a strong case as to class certification, liability, and damages, Plaintiffs' Counsel recognizes that the Court has yet to reach those issues, and ultimate success on these issues is far from assured.

1        20.     This case involves a number of complex issues on class certification, liability, and damages, including whether all class members were subject to the same illegal practices by Amerisave, whether Plaintiffs need to prove detrimental reliance in order to receive actual damages under TILA, and whether this is the type of violation for which statutory damages are available under TILA.  These complex legal, technical, and other issues pose a particular risk to Plaintiffs' hopes for success at trial.  Plaintiffs could not be certain that there would be a factual determination in their favor, or that a hard-fought victory would not be overturned on appeal.

        21.     In addition, this litigation may pose evidentiary challenges that would become more challenging as time went on.  Plaintiffs may have to rely in part on testimony from current and former Amerisave employees and agents, many of whom would be hostile witnesses, testifying about matters that occurred several years ago.  As a result of the time between the events of interest and any deposition or trial, the ability, as well as the willingness, of many witnesses to testify completely about those events would be impaired.  These issues would affect Plaintiffs' ability to successfully prosecute their claims.

        22.     The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions.  The reaction to such complex expert testimony is highly unpredictable.  Expert testimony about damages could rest on many subjective assumptions, which a court could reject as speculative and unreliable. Conceivably, there could be a finding that there were no damages, or that damages were only a fraction of the amount that Plaintiffs alleged.

        23.     Although Plaintiffs' Counsel believes that they would be able to provide convincing expert testimony as to damages and establish substantial damages at trial, they also realize that in the "battle of experts," the view of Plaintiffs' expert might not prevail. Accordingly, the risk of proving damages could not be eliminated until after a successful trial and the exhaustion of all appeals.

        24.     Finally, any finding of monetary damages at trial could potentially result in a less than complete recovery by consumers.  In contrast, the settlement here provides for the

1 immediate benefit of substantial cash refunds, paid directly and without any requirement to
2 submit a claim form, and a total benefit of $3.1 million to the class.  This is a significant recovery
3 for the Class.  Moreover, the maximum damages that could be recovered are $17,481,940, and
4 the certainty of immediate recovery makes this settlement the best result for the Class given the
5 risks of continued litigation.

6     25.    In view of the extensive investigation and settlement negotiations conducted
7 during the Litigation, Plaintiffs' Counsel have been able to identify the issues that are critical to
8 the outcome of this case.  Plaintiffs' Counsel thoroughly evaluated the strengths and weaknesses
9 of Plaintiffs' claims, the evidence adduced to date, and considered the substantial risks, as well as
10 the expense and length of time to prosecute the Litigation through trial and the inevitable
11 subsequent appeals.  As a result, for all the reasons outlined herein and in the final approval brief,
12 Plaintiffs' Counsel strongly believes that the Settlement represents an excellent result for the
13 consumers.

14     26.    I have considered the strengths and weaknesses of Plaintiffs' case based on the
15 information that Plaintiffs have furnished, the information obtained from Defendant, Defendant's
16 defense in this litigation, and the exchange of information during the settlement negotiations.
17 Based on the information learned in the course of this case and my experience with similar
18 consumer class actions, I believe that the settlement of this case is appropriate and that the
19 settlement terms are fair, adequate and reasonable.

20 **Conclusion**

21     27.    For the reasons set forth in Plaintiffs' motion for final approval and the papers
22 submitted in support, and in this declaration, I respectfully submit that the Settlement is fair,
23 reasonable, and adequate and should be approved.

24     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the
25 United States of America that the foregoing is true and correct.  Executed this 21st day of
26 December, 2012, at Washington, D.C.

27     /s/ *Craig L. Briskin*
28     Craig L. Briskin